# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NORTHEASTERN DIVISION

| | |
|---|---|
| **JOYCE C. HALL** ) | |
| ) | |
| v. ) | **Case No. 2:06-0089** |
| ) | **(Criminal Case No. 2:01-00004)** |
| **UNITED STATES OF AMERICA** ) | **Judge Echols** |

## MEMORANDUM

Pending before the Court is Petitioner Joyce C. Hall's "Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence" (Docket Entry No. 1) in which she claims counsel was ineffective in numerous respects. The Government has filed a response in opposition. (Docket Entry No. 13). Petitioner has also filed a Motion for an Evidentiary Hearing (Docket Entry No. 17).

## I. FACTUAL BACKGROUND

On October 11, 2001, a federal grand jury returned a 45-count Superseding Indictment against Petitioner, Fred Rowland ("Rowland"), Jimmy Birdwell ("Birdwell"), and Lisa Hartman ("Hartman"), charging them with numerous violations of federal law, including conspiracy, bank fraud, and money laundering. Rowland and Birdwell entered a plea of guilty to various charges and the Superseding Indictment as to Hartman was dismissed after she successfully completed pretrial diversion.

Petitioner was convicted by a jury on Counts 1, 5-14, 18-19, 21-23, 28, 31, 34, 36-37, and 41. Petitioner was also charged in a forfeiture count (Count 45) and the jury determined by a preponderance of the evidence that $686,202.71 represented the amount of the proceeds from Petitioner's illegal activity. Counts 4, 20, 35 and 44 were dismissed on motion of the Government.

1

The underlying eleven-day jury trial showed the following to be the general facts of this case. From 1993 to 2000, Petitioner was engaged in the business of buying and selling real estate in Jackson County, Tennessee. Some property was purchased in her own name and later resold. Other property was purchased in the name of others, some of whom were silent partners.

In most instances, the real estate property involved in the conspiracy was purchased with a bank loan obtained from Citizens Bank of Gainesboro ("Citizens Bank" or "the bank"). Petitioner would refer her real estate customers to Citizens Bank to obtain loans for the purchases. The point man at the bank was co-conspirator Birdwell, a Vice President and loan officer.

As a part of the loan process, the Petitioner's real estate customers would submit written loan applications to Citizens Bank, along with their real estate sales contract and other documents. The evidence at trial indicated that many of the loan applications and supporting documents were often exaggerated, inaccurate or downright false. The Government's evidence showed that Petitioner frequently falsified the documentation herself, or coached the prospective buyers into falsifying documentation in order to justify the loan requirements and assure approval by the bank.

The falsifications and misrepresentations of the loan documents took many forms. Borrowers, with the aid and direction of Petitioner and Birdwell, presented the bank with fictitious or inflated property appraisals. Non-existent or over-valued collateral was listed as security for loans. Some loans reflected that inflated or non-existent down payments had been paid by the borrower. Employment positions and salaries were misstated, as was history and experience and other financial information. Some applications were submitted in blank with no signatures, while others were submitted with signatures which were forged. The proof at trial indicated that some of the loans were made in the names of persons who did not apply for a loan and some of the property was titled in bogus names.

2

For a day and one-half, Petitioner testified in her own defense and maintained she did nothing illegal. Nevertheless, much of her testimony was refuted by witnesses presented by the Government.

For example, Petitioner testified that, from the beginning, she informed the bank she had silent partners involved in transactions, yet some of the partners testified they did not know property was being titled in their names. Petitioner denied instructing or helping others to submit bogus applications, but applicants testified Petitioner helped them fill out applications reflecting inflated assets, salaries, experience and down payments. Petitioner denied working with Birdwell, but witnesses testified that Petitioner herself stated she was working with Birdwell. Petitioner also denied that she wrongfully received any of the loan proceeds, but there was ample evidence to the contrary. The jury found Petitioner guilty on 22 counts.

After her convictions, the Court sentenced Petitioner to a term of imprisonment of 70 months, which was at the low end of the then-mandatory sentencing guideline range. The Court ordered Petitioner to make restitution in the amount of $571,496.81 and to forfeit the $686,202.71 that the jury found to be the proceeds of unlawful activity.

Petitioner appealed the length of her sentence and the jury's determination as to the amount of restitution to the Sixth Circuit. On appeal, because of the intervening decision of the Supreme Court in United States v. Booker, 543 U.S. 220 (2005) which deemed the Sentencing Guidelines advisory, the Sixth Circuit remanded for resentencing. The Sixth Circuit upheld Petitioner's challenge to the jury utilizing a preponderance of the evidence standard in determining the amount of restitution. United States v. Hall, 411 F.3d 651 (6th Cir. 2005).

On November 14, 2005, this Court held a resentencing hearing. Petitioner was sentenced to a term of imprisonment of 58 months. The Court again ordered restitution in the amount of

$571,496.81 and the forfeiture of $686,202.17 in ill-gotten gains. The present § 2255 Motion followed.

## II. STANDARD OF REVIEW

To prevail on a § 2255 motion, the Petitioner must establish either an error of constitutional magnitude that had a substantial and injurious effect or influence on his criminal proceeding, see Brecht v. Abrahamson, 507 U.S. 619, 637-38 (1993), or the record must reflect a fundamental defect in the proceedings that inherently resulted in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure. Reed v. Farley, 512 U.S. 339, 348 (1994); United States v. Todaro, 982 F.2d 1025, 1028 (6th Cir. 1993). Claims of error must be raised in the trial court and on direct appeal or such claims are procedurally defaulted. See Phillip v. United States, 229 F.3d 550, 552 (6th Cir. 2000).

Under Rule 8 of the Rules Governing Section 2255 Proceedings, the Court "must review the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted." Petitioner is not entitled to an evidentiary hearing if the § 2255 motion and the record of the case conclusively show that she is not entitled to relief. See Green v. United States, 65 F.3d 546, 548 (6th Cir. 1995). Finally, when the trial judge also hears the collateral proceedings, the judge may rely on his recollections of the prior proceedings in ruling on the collateral attack. Blanton v. United States, 94 F.3d 227, 235 (6th Cir. 1996).

## III. ANALYSIS

Petitioner claims counsel, Joseph F. Edwards, Esq. ("Edwards") was ineffective in numerous respects. Specifically, Petitioner claims Edwards was ineffective in (a) failing to obtain a handwriting analysis to show that she did not sign certain documents; (b) failing to request the

4

flowchart from the Government which would have shown that Petitioner did not owe any restitution; (c) failing to object to the witness who testified at sentencing on the issue of restitution; (d) failing to obtain evidence from the minutes of the bank committee meetings showing that the bank was fully aware and approved of every loan; (e) failing to notify the Court that the bank attorney's computer was stolen at or near the time of the indictment in this case; (f) failing to call "key" witnesses on Petitioner's behalf; (g) failing to raise United States v. Booker, 543 U.S. 220 (2005) at sentencing; (h) failing to appeal her resentence; and (i) failing to bring to the Court's attention allegedly prejudicial statements made by members of the jury panel.[1]

To establish ineffective assistance of counsel, Petitioner must show that her trial or appellate counsel's performance was deficient and that the deficiency prejudiced her. See Strickland v. Washington, 466 U.S. 668, 687 (1984); Evitts v. Lucey, 469 U.S. 387, 396 (1985). Petitioner must show that counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment, and that there is a reasonable probability that the lawyer's errors prejudiced the outcome of the proceedings against her. Strickland, 466 U.S. at 687; Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999). A reasonable probability is one sufficient to undermine confidence in the outcome; it is a less demanding standard than "more likely than not." With respect to most of her claims, Petitioner has failed to establish counsel was deficient and/or that any alleged deficiency prejudiced her.

---

[1] Petitioner also claims that counsel was ineffective in failing to give Petitioner's files to the Petitioner so that she could better prepare the present Motion to Vacate. Counsel disputes this claim and says that, after the direct appeal was completed, he told Petitioner's husband that he could have the file if he paid for the copying expenses of $300 to $500. This post-trial and post-sentencing dispute is irrelevant to the present concern which is whether counsel's efforts during trial or at sentencing were deficient and/or prejudicial.

5

(**A**) **Failure To Call Handwriting Expert**

Petitioner claims she "was in another country at the time of the scheme to defraud the bank," yet counsel "refused to request of the court an [sic] handwriting analysis to verify my signature with the signature on the loans and checks." (Docket Entry No. 1 at 4[2]). This blanket assertion is incredible on its face since Petitioner certainly cannot contend that she was in another country during the entire seven-year span encompassed by the Indictment. In any event, merely contending that trial counsel should have hired a handwriting expert, without any evidence that the expert would testify favorably to Petitioner does not entitle Petitioner to relief under § 2255. Winston v. Ashcroft, 16 Fed. Appx. 612, 613 (9th Cir. 2001); United States v. Davis, 2000 WL 1195573 at *1 (9th Cir. 2000).

In a Declaration, trial counsel indicates that he intentionally forewent calling a handwriting expert because he did not believe it would be to Petitioner's benefit to call such an expert. He based that decision on numerous interviews he conducted with Petitioner and others familiar with her signature, including her son, Michael Alexander. Counsel was concerned about what the results of such an analysis would show and instead chose to examine witnesses about forgeries of signatures in relation to some of the loan documents involved in this case. (Edwards Decl. ¶ A).

Counsel's failure to call a handwriting expert was an informed choice and considered decision. Under Strickland, defense counsel is afforded "wide latitude . . . in making tactical decisions." Strickland, 466 U.S. at 689. "The trial process contains a myriad of complex decisions" and the petitioner must therefore "'overcome the presumption that, under the circumstances the challenged actions might be considered sound trial strategy.'" United States v. Fortson, 194 F.3d

---

[2] This citation, "Docket Entry No. 1 at 4," is to an unnumbered page between pages number 4 and 5 in Petitioner's Motion to Vacate.

6

730, 736 (6th Cir. 1999) quoting Strickland, 466 U.S. at 689. Present Petitioner has wholly failed to overcome that presumption. Counsel was rightly concerned that utilizing an expert would only bolster the Government's case and discredit Petitioner. Petitioner could deny signing documents without the jury being confronted with an expert who stated something to the contrary. See, United States v. Brown, 1994 WL 649086 at *3 (4th Cir. 1994)("attorney's decision not to call the [handwriting expert] witness was based on trial strategy).

In any event, Petitioner has failed to show prejudice with respect to counsel's failure to offer a handwriting expert. The jury was made aware of the fact that some documents had been doctored and that some contained forged signatures. Counsel elicited testimony from several witnesses that people signed other people's names without permission. He also elicited testimony from the President of Citizen's Bank that Birdwell had doctored documents. Petitioner herself took the stand and denied signing certain documents. Nevertheless, the evidence was overwhelming that Petitioner repeatedly and consistently participated in the overall fraud on Citizens Bank.

**(B) & (C) Failure To Request Flow Chart And Failure To "Object" To Witness**

Petitioner claims that the "[r]estitution amount is questionable because Counsel did not request the flowchart from prosecuting attorney" and "Counsel failed to object to the witness when he testified that he did not know the amount that I allegedly owed." (Docket Entry No. 1 at 4). These are unsupported and conclusory assertions.

With regard to the flow charts, counsel unequivocally asserts that he received such a chart from the Government, as well as a revised chart which concerned restitution prior to the sentencing hearing. The record bears out those assertions.

Michael McElroy ("McElroy"), an Internal Revenue Service Special Agent and the Government's case agent prepared charts relating to the fraudulently obtained loans. The charts

7

were based upon documents which were submitted into evidence in the case. Edwards was obviously aware of the charts and underlying documents during trial given that he questioned McElroy extensively on cross-examination about the charts.

A revised flow chart was also prepared by McElroy for the sentencing hearing summarizing the amount of loss caused by Petitioner's participation in the scheme to defraud Citizens Bank. This revised chart was based on the charts which were utilized at trial and the supporting documentation. In his Declaration, Edwards claims he received and reviewed the revised flow chart prior to Petitioner's sentencing. Again, the record wholly supports these assertions. Petitioner's conclusory statements to the contrary are without merit.

When William M. Cohen, the Assistant United States Attorney who prosecuted the case for the Government, passed the revised flow chart (Ex. 1) to McElroy during the sentencing hearing, he stated that he had provided Edwards a copy of the revised chart and Edwards did not dispute that contention. (Sent. Hrg. Tr. at 16). In direct contradiction to Petitioner's allegations, Edwards cross-examined McElroy about payments made on certain of the loans listed on the chart, and questioned him about certain loans which had been foreclosed. Moreover, the revised flow chart was based upon the charts which had been introduced at trial to track the various loan transactions and money trail. The loan documents related to the individual loans were also introduced at trial. Having had the opportunity to observe Edwards both at trial and at the sentencing hearing, the Court is certain that Edwards was aware of the charts and the underlying documents relating to the loans.

Even if it was assumed, contrary to the evidence, that Edwards had not seen the original or revised flow charts, Petitioner has not shown prejudice. Petitioner's claim on this issue is that the restitution figure was improper. However, the Court was present during both the trial and sentencing hearing and based its determination of the proper amount of restitution upon all of the evidence

8

presented. Hence, Edwards' advance knowledge of the contents of the charts is not at all determinative of this fact because the charts were based upon underlying documents and the testimony of witnesses, and Edwards was well aware of this evidence. The Court set forth the basis of its ruling on the amount of restitution in a lengthy and detailed Judgment and Commitment Order.

Petitioner's suggestion that McElroy testified that he did not know the amount of the loss to the bank is simply not borne out by the record. The Court has reread McElroy's testimony at sentencing and he did not indicate any lack of knowledge about the fact or amount of loss involved in this case. In fact, McElroy was asked if he had determined the amount of an actual loss and, if so, how his calculations were made. McElroy testified that "[i]f there was a payment on each loan, I just took the loan amount and subtracted the payment that was made on the loan to determine if there was any balance left as to the actual loss" and that if a loan was completely paid off, it was not listed as an actual loss. (Sent. Hrg. Tr. at 16-17).

### (D) Failure To Obtain Minutes Of Bank Committee Meetings

Petitioner claims counsel was ineffective in failing to obtain bank minutes which showed that the bank was fully aware of and approved each loan. Petitioner provides no support for this allegation.

In his declaration, Edwards contradicts Petitioner's bald assertion and states that he did, in fact, subpoena minutes of the bank's board meetings in which loans underlying this case were discussed. This assertion is supported by the fact that Edwards questioned Troy York, the bank President, about minutes relating to underlying loans.

In any event, Petitioner's contention relating to bank minutes is largely irrelevant to the question of her guilt. It would be unusual for a bank board to examine each of the loans made by the bank. Even if the board did review and approve some of the larger loans, that approval does

9

not mean that the board was aware that the loans were being secured through fraud, deceit, and the use of fraudulent documentation. Moreover, even if there was some proof, which there was none, that the board was somehow aware that the documents submitted contained fraudulent representations, this would not absolve Petitioner of guilt. The charges contained in the Superseding Indictment for which Petitioner was found guilty are not absolved because others were involved in the crimes or others were negligent in discovering her criminal activity.

### (E) Failure To Notify The Court That Bank Attorney's Computer Was Stolen

Petitioner next claims that counsel was ineffective when he "failed to put the court on notice that the bank attorney and committee member['s] computer was stolen, during this indictment." (Docket Entry No. 1 at 4). In her Affidavit, Petitioner claims that the computer was the only thing stolen from the bank attorney's office. (Pet. Aff. ¶ D).

This claim is wholly contradicted by the record. The Court (and jury) was aware that the bank's attorney's computer was stolen. In fact, Edwards called the bank's attorney as a witness and questioned him about a burglary at his office. (Tr. Tr. at 1652-53). Further, the bank's attorney did not state that the computer was the only thing stolen. He stated that "[t]hey broke out the back window and came in, stole my copier and computer monitor and fax machine and whatever else they could haul off." (Tr. Tr. at 1653).

Obviously, the Court and jury were well aware from this testimony that the bank's attorney's computer was stolen. The attorney testified some records relating to Petitioner's (and other customers') banking transactions stored on the computer were lost, but that many of these records were reconstructed because he had a zip drive containing files which were stored on the computer.

Petitioner's counsel cannot be deemed ineffective since he brought this matter squarely to the attention of the Court and the jury and attempted to cast doubt on the accuracy of the bank

10

records. Further, Petitioner cannot show prejudice because she cannot show that any of the missing records would have pointed to her innocence and because the jury was aware of the missing computer and could take that into consideration when it deliberated upon its verdict.

### (F) Failing To Call "Key" Witnesses On Petitioner's Behalf

In her Motion, Petitioner also claims counsel was ineffective in failing to call "key" witnesses on her behalf. In her Affidavit and Memorandum, Petitioner claims that counsel should have called her accountant Paula Standring ("Standring") and her Co-Defendant Birdwell. Petitioner claims that Standring would have aided her defense by testifying that all of Petitioner's records "were in compliance and complete order with the rules, policies and procedures of the Internal Revenue Service, (IRS)." (Pet. Aff. ¶ F). Petitioner claims she was told that Birdwell was either pleading guilty to the same charges as she, or was pleading guilty to a forgery charge, and that his plea would somehow vindicate Petitioner.

Edwards claims that he interviewed both potential witnesses. He further asserts he did not call these witnesses because, after his investigation, he did not believe they would be helpful to the Petitioner.

Strickland teaches that "[j]udicial scrutiny of counsel's performance must be highly deferential and that "every effort [must] be made to eliminate the distorting effects of hindsight." Strickland, 466 U.S. at 689. Therefore, "[t]he decision not to call a witness is a virtually unchallengeable decision of trial strategy." United States v. Staples, 410 F.3d 383, 388 (8th Cir. 2005).

In this case, Petitioner cannot establish counsel was ineffective in failing to call either Standring or Birdwell. While Petitioner claims that Standring would have testified Petitioner's paperwork complied with the requirements of the Internal Revenue Service, this does not speak to

11

the offenses of conviction, i.e. conspiracy, bank fraud, and money laundering. As for Birdwell, the fact that he pled guilty would not absolve Petitioner. Quite the contrary, Birdwell pled guilty to conspiring with Petitioner and the other co-defendants to commit bank fraud utilizing fraudulent documents (Count 1), and, along with Petitioner and another co-defendant, to laundering the bank fraud proceeds. Birdwell entered his plea on January 27, 2003 before the Petitioner's trial under the terms of a Plea Agreement with the Government requiring complete cooperation, full disclosure, and truthful testimony if called in Petitioner's case. Deciding whether to call such witnesses necessarily involves trial strategy, something which is unassailable in these Section 2255 proceedings.

In establishing ineffective assistance of counsel, Petitioner bears "a heavy burden of proof." Whiting v. Burt, 395 F.3d 602, 617 (6th Cir. 2005). Petitioner "must show that counsel did not attempt to learn the facts of the case." Pough v. United States, 442 F.3d 959, 966 (6th Cir. 2006). Here, it is obvious from the record, that counsel spent a great deal of time learning the facts of this case and attempted to present the best case for Petitioner. In this regard, he called eleven witnesses during Petitioner's case. His decision not to call Standring and Birdwell was based upon his considered judgment that neither would aid Petitioner's case.

**(G) Failure To Raise Booker At Time of Sentencing**

Petitioner next asserts that counsel was ineffective because he "failed to apply [the] Booker case to the enhancements to my sentence." (Docket Entry No. 1 at 4). Petitioner can show neither deficiency nor prejudice with regard to this claim.

Counsel was not deficient in failing to raise Booker. Petitioner's sentencing hearing was held on October 20, 2003. United States v. Booker, 543 U.S. 220 (2005) was not decided until January 12, 2005. Regardless, Petitioner cannot show prejudice because the Sixth Circuit

12

considered Booker when Petitioner's sentence was challenged on appeal and the case was remanded to this Court for resentencing based specifically on Booker.

**(H) Failure to Appeal Resentencing**

Petitioner claims counsel was ineffective in failing to appeal her resentencing after remand. Counsel states in his Declaration that after resentencing he met with Petitioner, her husband, and her son and told them that he did not believe Petitioner would prevail on appeal. Counsel claims that Petitioner never asked him to appeal her sentence, either during that meeting or any time thereafter. (Edwards Decl. ¶ I). Petitioner suggests an entirely different scenario. She claims that after being resentenced and while still in the courtroom prior to being transported to a Memphis holding facility, she requested that Counsel file an appeal on her behalf. (Pet. Aff. ¶ J).

In Roe v. Flores-Ortega, 528 U.S. 470 (2000), the Supreme Court held that Strickland's prejudice and performance analysis applied to claims "that counsel was constitutionally ineffective for failing to file a notice of appeal." Id. at 477. "[T]he failure to perfect a direct appeal, in derogation of a defendant's actual request, is a per se violation of the Sixth Amendment." Deitz v. Money, 391 F.3d 804, 810 (6th Cir. 2004). In such situations, prejudice is presumed because the failure to file a requested notice of appeal "does not merely deprive the defendant of effective assistance of counsel, it deprives him of the assistance of counsel altogether." Ludwig v. United States, 162 F.3d 456, 459 (6th Cir. 1998). "Thus, the failure to perfect a direct appeal when requested by the defendant violates the Sixth Amendment without regard to the probability of success on appeal." Id.

In this case, the Court simply cannot decide this issue on the record developed during the underlying trial and appellate proceedings in this case. There is a clear conflict between what

13

Petitioner says occurred and what counsel says occurred. A hearing from which the Court can make a credibility determination is necessary to resolve this conflict.

### (I) Failure To Bring Juror Misconduct To The Attention Of The Court

Finally, Petitioner claims that counsel was ineffective in failing to bring to the Court's attention alleged misconduct by certain jurors. She claims she heard two jurors discussing her case at some point during the trial. Specifically she claims one juror told another juror **"[i]f the Feds brought her to trial, she's guilty. I don't know anything about banking."** (Docket Entry No. 1 at 4)(emphasis in original). In his Declaration, counsel claims that Petitioner never informed him of any such statement by a juror and that if he had been made aware of the alleged conversation he would have immediately brought the matter to the attention of the Court. (Edwards Decl. ¶ B).

As with the issue of appeal after resentencing, this is an issue which needs to be addressed during the course of an evidentiary hearing. Under section 2255, a hearing is required "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. Because whether the issue of alleged misconduct by jurors occurred and was communicated to counsel "relates primarily to purported occurrences outside the courtroom and upon which the record could, therefore cast no real light," Machibroda v. United States, 368 U.S. 487, 494-95 (1962), the Court will hear testimony from Petitioner and her trial counsel on this issue at an evidentiary hearing.

### IV. CONCLUSION

On the basis of the foregoing, Petitioner's "Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence" (Docket Entry No. 1), will be denied with respect to her claims that counsel was ineffective in (a) failing to obtain a handwriting analysis to show that she did not sign certain documents; (b) failing to request the flowchart from the Government which would have

14

shown that Petitioner did not owe any restitution; (c) failing to object to the witness who testified at sentencing on the issue of restitution; (d) failing to obtain evidence from the minutes of the committee meetings showing that the bank was fully aware and approved of every loan; (e) failing to notify the Court that the bank attorney's computer was stolen at or near the time of the indictment in this case; (f) failing to call "key" witnesses on Petitioner's behalf; and (g) failing to raise <u>United States v. Booker</u>, 543 U.S. 220 (2005) at sentencing.  Petitioner'sMotion for an Evidentiary Hearing (Docket Entry No. 17) will be granted solely with respect to her claims that counsel was ineffective in (1) failing to appeal after resentencing and (2) failing to bring to the Court's attention alleged prejudicial comments made by a member of the jury panel during trial.

    An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE